<u>PUBLISH</u>

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 23, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID GLENN BERRYHILL, JR.,

    Defendant - Appellant.

No. 24-7008

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:23-CR-00021-JFH-1)**
_____

Jon W. Grevillius, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Linda A. Epperley, Assistant United States Attorney (Christopher J. Wilson, United States Attorney, with her on the brief) Office of the United States Attorney for the Eastern District of Oklahoma, Muskogee, Oklahoma, for Plaintiff-Appellee.
_____

Before **HOLMES**, Chief Judge, **SEYMOUR**, and **BACHARACH**, Circuit Judges.
_____

**HOLMES**, Chief Judge.
_____

David Berryhill, Jr. appeals his sentence for one count of possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Mr. Berryhill contends that his sentence should be

vacated and that his case should be remanded for resentencing because the district court committed reversible plain error when it denied him a mitigating-role adjustment while applying an incorrect legal standard.  Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** Mr. Berryhill's sentence because we conclude that although the district court erred, its error was not clear or obvious in satisfaction of the second prong of the plain-error standard.

## I

We begin by summarizing the facts and the procedural history that give rise to Mr. Berryhill's appeal.

## A

On January 25, 2023, Oklahoma Highway Patrol ("OHP") Trooper Daran Koch pulled over Mr. Berryhill while he was driving near Checotah, Oklahoma, for failing to signal prior to changing lanes.  Trooper Koch requested that Mr. Berryhill accompany him to his patrol car while he issued Mr. Berryhill a warning for the violation.  During the period that Mr. Berryhill was out of the car, OHP Trooper Clint Craft used a K-9 unit dog to sniff Mr. Berryhill's vehicle.  The dog alerted, so OHP officers conducted a pat-down search of Mr. Berryhill and searched his vehicle. They uncovered a "small glass smoking device" in Mr. Berryhill's pocket, a "large chunk of suspected methamphetamine" in his shirt pocket, a black bag on the rear passenger seat of the car containing "seven large plastic bags of suspected methamphetamine," "a small, black plastic case containing a small amount of suspected methamphetamine" in the central console of the car, and an ice chest in the

2

vehicle's trunk containing "numerous plastic bags of a clear, granular substance." R., Vol. II, at 29–30 ¶¶ 12–15 (Presentence Investigation Report [hereinafter, "PSR"], dated Jan. 8, 2024). The substance in the ice chest was later identified as dimethyl sulfone,[1] and the other substances were confirmed to be methamphetamine hydrochloride, with a pure substance weight of 2,986.82 grams. Additionally, Drug Enforcement Administration ("DEA") agents who later transported Mr. Berryhill to their office discovered a white envelope with $2,500 in cash on Mr. Berryhill's person.

After he was patted down and Mirandized, Mr. Berryhill informed OHP that "he was being paid $1,000 to transport the methamphetamine." *Id.* at 29 ¶ 13. Once Oklahoma Bureau of Narcotics ("OBN") and DEA agents arrived, Mr. Berryhill agreed to speak with them and told them he was "only a mule." *Id.* at 30 ¶ 16. However, Mr. Berryhill did not name anyone else involved in the drug trafficking activity; he told law enforcement "that if he cooperated and went to jail, he would be killed." *Id.* Mr. Berryhill did provide investigators with the passcode to a cell phone

---

[1]    Based on its comments at the sentencing hearing—which we quote in pertinent part *infra*—it appears that the district court was not familiar with this substance and its uses. Accordingly, it is safe to say that the court did not weigh those matters in its sentencing calculus. Consequently, neither do we. We simply note for informational purposes that we previously mentioned in a non-precedential (but persuasive) Tenth Circuit decision that one significant use of dimethyl sulfone is "as a cutting agent" for methamphetamine. *See United States v. Valenzuela*, 484 F. App'x 243, 245 (10th Cir. 2012) (noting that dimethyl sulfone is "a dietary supplement used as a cutting agent" for methamphetamine); *see also United States v. Segura-Baltazar*, 448 F.3d 1281, 1292 (11th Cir. 2006) (describing dimethyl sulfone as "a common 'cutting' agent for methamphetamine").

found on his person but said he did not know the passcodes for other phones found in his car.

On March 16, 2023, the DEA completed its review of the information found on the phones that were seized from Mr. Berryhill's person and vehicle. The DEA's review revealed multiple conversations between Mr. Berryhill and "additional individuals," in which Mr. Berryhill "discussed the trafficking of methamphetamine through the areas of Aztec, New Mexico[;] Albuquerque, New Mexico[;] Phoenix, Arizona[;] Amarillo, Texas[;] and Tulsa, Oklahoma." *Id.* at 30 ¶ 18. He communicated with "individuals utilizing Mexican phone numbers regarding obtaining methamphetamine." *Id.* "With other individuals, [Mr. Berryhill] discussed prices, presumably for the distribution of methamphetamine, of up to $25,500." *Id.*

**B**

On February 15, 2023, Mr. Berryhill was indicted for one count of possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Mr. Berryhill pleaded guilty to the offense, without a plea agreement, on July 6, 2023.

After the Probation Office for the Eastern District of Oklahoma ("Probation") submitted its draft PSR, Mr. Berryhill objected on the ground that he was "entitled to an adjustment for his role in the offense" under § 3B1.2 of the U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") because he "was transporting drugs," which "ma[de] him substantially less culpable than the average participant." R., Vol. II, at 21 (Draft PSR Objs., Jan. 15, 2024). Indeed, Mr. Berryhill asserted

4

that he deserved a four-level mitigating-role adjustment—corresponding under the Guidelines to the role of "minimal participant"—noting that he

> had little understanding of the scope and structure of the criminal activity, he did not participate in planning or organizing the criminal activity, he did not exercise decision-making authority or influence the decision-making authority of the conspiracy, his involvement in the criminal activity was limited to drug transportation, and his benefit from his involvement in the criminal activity was minimal to the scope and duration of the conspiracy.

*Id.* Mr. Berryhill argued that his actions resembled the example that § 3B1.2 of the Guidelines described of someone lacking a proprietary interest in the criminal activity who was merely paid to perform a certain task; consequently, Mr. Berryhill reasoned that he was entitled to a mitigating-role adjustment.

The government responded that Mr. Berryhill was not a "minimal participant" in the criminal activity and therefore not entitled to a mitigating-role adjustment because the evidence refuted Mr. Berryhill's "self-serving statements." *Id.* at 22 (Letter from Dep't of Justice to U.S. Probation Office, dated Jan. 18, 2024). As evidence of his role in the crime, the government pointed to Mr. Berryhill's knowledge of the amount of narcotics he possessed, the sheer quantity of narcotics found in his vehicle, and the fact that Mr. Berryhill apparently chose the route of his trip and used his own vehicle.

Probation evaluated both parties' arguments and decided to "maintain[]" its previous position that Mr. Berryhill was not entitled to "a four-level reduction . . . for mitigating role." *Id.* at 24 (Addendum to PSR, filed Jan. 19, 2024). Probation

reasoned that Mr. Berryhill was the "sole participant" of the criminal count to which he pleaded guilty; that he "knowingly possessed a substantial amount of methamphetamine"; and, according to discovery materials, that he "held knowledge regarding the scope of the criminal activity including the distribution of methamphetamine." *Id.*

In the final PSR, Probation used the 2023 Guidelines to calculate Mr. Berryhill's base offense level as thirty-six. Probation then subtracted three points for Mr. Berryhill's acceptance of responsibility and determined that Mr. Berryhill had a criminal history score of three, which translated to a criminal history category of II. Finally, Probation determined that the advisory Guidelines imprisonment range corresponding to an offense level of thirty-three and criminal history category of II was 151 months to 188 months. Probation did not identify any factors that would warrant a departure or variance from the Guidelines range.

On February 15, 2024, Mr. Berryhill again objected to the PSR on the basis that it did not contain a mitigating-role reduction to his offense level, pursuant to § 3B1.2 of the Guidelines, but this time he requested a two-point reduction because he alleged that he was a "minor participant." *See id.* at 49–51 (Def.'s Obj. to PSR, filed Feb. 15, 2024). He claimed he was merely "transporting drugs," which "ma[de] him substantially less culpable than the average participant," that "his involvement in being a courier spanned a short time of the entire conspiracy," and that "he never transported drugs across the border from Mexico." *Id.* at 49. He then recited the five elements that the Guidelines advise courts to consider in evaluating whether a

6

defendant qualifies for the mitigating-role adjustment and argued that each of the elements weighed in favor of his reduction request. Mr. Berryhill simultaneously moved for a downward variance of 120 months, partially as an appropriate "reflect[ion] [of] the level of his involvement in the criminal activity in comparison to the other uncharged participants" because he was "act[ing] as a drug courier." *Id.* at 56 (Def.'s Sentencing Mem., filed Feb. 25, 2024).

On February 21, 2024, the district court held Mr. Berryhill's sentencing hearing. At the hearing, the government explained that it did "not believe that a minor participant reduction applies in this case" and underscored the reasoning laid out in its response to Mr. Berryhill's objection to the draft PSR—*viz.*, that the "mere fact that he was transporting narcotics [did] not make him a minor participant" and that facts like his knowledge of the narcotics and the amount of narcotics in the car, as well as his ability to choose his own route and use of his own vehicle, all suggested that he played more than a minor role in the criminal activity. R., Vol. III, at 27–28 (Sentencing Hr'g Tr., held Feb. 21, 2024). Mr. Berryhill stood by his written submission arguing for an adjustment and variance.

At the hearing, the district court denied Mr. Berryhill's motion for a downward variance and his objection to the PSR's failure to include a two-level mitigating-role adjustment. The court stated:

> The things that I saw, the fact that there were seven -
> - at least seven bags of a pound each methamphetamine in
> the car when the defendant was arrested, the fact that there
> was some chemical in the trunk. I have no idea what it was,
> but it was some chemical that was not a narcotic in the trunk,

7

and there was a significant amount. That the cell phone data that apparently was accessible or accessed by the government contained multiple conversations of this defendant speaking about drug transactions, talking with different people, numbers of conversations, and it indicates to me that he was a lot more than a mule. It was not a one-time event. *A lot of mules are accessed, take it to Chicago and come back, and I'll give you $1,000 or something like that*, but this went on over a period of time.

So I think that the request for the downward variance, based on his insignificant participation -- not insignificant, but a lesser amount of participation, should clearly be overruled and the downward variance denied.

And the objection to the fact that the presentence report did not contain the two-point reduction, based on the offense level, is also denied.

*Id.* at 29–30 (emphasis added). In effect, the district court did not find Mr. Berryhill's description of his role in the offense credible.

Mr. Berryhill did not make any further objections after the district court made this ruling. The court then sentenced Mr. Berryhill to 168 months' imprisonment. In explaining its sentence, the district court noted the "scourge" that Mr. Berryhill had contributed to by "taking large amounts of methamphetamine and delivering them to customers" and the "serious crime" that Mr. Berryhill committed by "being a part of this distribution for an extended period of time." *Id.* at 37–38.

The district court entered final judgment, and Mr. Berryhill timely appealed shortly thereafter.

## II

With the background of the matter established, we now focus on the legal question in this case—whether the district court committed legal error in denying Mr. Berryhill a mitigating-role adjustment. First, we clarify our standard of review. Then, we summarize the standard for the Guidelines' mitigating-role adjustment. Next, we clarify the nature of the parties' disagreement. Finally, we evaluate the district court's reasoning under the plain-error rubric. We conclude that the court committed error at prong one of that four-prong rubric, but its error was not clear or obvious at prong two. Consequently, Mr. Berryhill has not carried his burden under the plain-error framework, and we may affirm the court's sentencing judgment without needing to address the remaining two plain-error prongs.

## A

While he requested a mitigating-role adjustment before the district court, Mr. Berryhill acknowledges that the specific argument he makes on appeal—*viz.*, the district court applied the incorrect legal standard when denying his requested mitigating-role adjustment—is *not* an argument that he made before the district court. Therefore, we review the district court's mitigating-role-adjustment analysis for plain error. *See United States v. Rosales-Miranda*, 755 F.3d 1253, 1257 (10th Cir. 2014). "Under this demanding standard, [an appellant] must demonstrate: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court *may* exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation

9

of judicial proceedings." *Id.* at 1258 (quoting *United States v. McGehee*, 672 F.3d 860, 876 (10th Cir. 2012)). "We will not reverse a conviction for plain error unless *all four prongs* of the plain[-]error test are satisfied." *United States v. Caraway*, 534 F.3d 1290, 1299 (10th Cir. 2008) (emphasis added).

In the sentencing context, "[e]rror may be plain based on the text of statutes or Guidelines." *United States v. Arellanes-Portillo*, 34 F.4th 1132, 1140 (10th Cir. 2022). Also in the sentencing context, the third plain error prong requires the appellant to show "a reasonable probability that, absent the district court's error, [he] would have received a different sentence." *Rosales-Miranda*, 755 F.3d at 1259. "[B]ecause the Guidelines exert their force whenever a district court complies with the federal sentencing scheme by first calculating the Guidelines range, a miscalculation in the Guidelines range runs the risk of affecting the ultimate sentence *regardless of* whether the court ultimately imposes a sentence within or outside that range." *Id.* "In the ordinary case, . . . the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 585 U.S. 129, 145 (2018).

**B**

"[T]he law of mitigating-role adjustments [] is grounded in the Guidelines and associated commentary." *United States v. D.A.*, 132 F.4th 1163, 1172 (10th Cir. 2025). Section 3B1.2 of the Guidelines instructs that courts "decrease the offense level" of a defendant "[b]ased on the defendant's role in the offense." U.S.S.G. § 3B1.2 (2023). "If the defendant was a minor participant in any criminal activity," the Guidelines direct a sentencing court to "decrease [the offense level] by 2 levels." *Id.* § 3B1.2(b).

The application notes to § 3B1.2 explain that the provision "is not applicable unless more than one participant was involved in the offense." *Id.* § 3B1.2 cmt. n.2. Accordingly, the notes counsel that "an adjustment under this guideline may not apply to a defendant who is the only defendant convicted of an offense *unless* that offense involved other participants in addition to the defendant and the defendant otherwise qualifies for such an adjustment." *Id.* (emphasis added).

The adjustment is available "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." *Id.* cmt. n.3(A). "For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline." *Id.*

The mitigating-role adjustment analysis requires a court to "(1) collect a series of inputs, (2) apply those inputs to the Guidelines role adjustment analysis, and (3) based on the result of that analysis, grant or deny the mitigating-role adjustment." *D.A.*, 132 F.4th at 1172. The determination concerning the applicability of a mitigating-role adjustment "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(C) (2023). The court

> should consider the following non-exhaustive list of factors:
>
> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

*Id.*; *accord D.A.*, 132 F.4th at 1172–73. The Guidelines further explain that the minor participant two-level adjustment is appropriate for "a defendant described in Application Note 3(A) who is less culpable than *most other participants* in the

criminal activity, but whose role could not be described as minimal."[2]  U.S.S.G. § 3B1.2 cmt. n.5 (emphasis added).

"[C]ourts must give commentary [to the Guidelines] controlling weight unless it 'run[s] afoul of the Constitution or a federal statute' or is 'plainly erroneous or inconsistent' with the guideline provision it purports to interpret."  *United States v. Maloid*, 71 F.4th 795, 803 (10th Cir. 2023) (last alteration in original) (quoting *Stinson v. United States*, 508 U.S. 36, 47 (1993)).

"[A] defendant bears the burden of proving by a preponderance of the evidence whether an adjustment under [U.S.S.G.] § 3B1.2 is warranted."  *United States v. Martinez*, 512 F.3d 1268, 1275 (10th Cir. 2008).

**C**

In his opening brief, Mr. Berryhill argues that the district court committed reversible plain error when it determined that the mitigating-role adjustment did not apply.  Specifically, he contends that the district court applied the incorrect legal test when evaluating whether Mr. Berryhill qualified for a mitigating-role adjustment by comparing Mr. Berryhill's conduct to that of a "*hypothetical* average drug courier" rather than the *actual* "other participants in *this* drug crime."  Aplt.'s Opening Br. at 6 (emphasis added).  Mr. Berryhill notes that the court did not, for instance, "address

---

[2]     A minimal participant is described as a defendant "who [is] plainly among the *least culpable* of those involved in the conduct of a group.  Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."  U.S.S.G. § 3B1.2 cmt. n.4 (emphasis added).

the culpability or conduct of the 'different people' with whom it believed Mr. Berryhill was communicating about the offense." *Id.* at 8 (quoting R., Vol. III, at 29). Indeed, as Mr. Berryhill reasons, even if the district court did not find his description of his role in the offense believable, the court should have still assessed the record evidence under the proper test (i.e., the relative-culpability test) by comparing his role to those of other actual participants. *Id.* at 11 ("[E]ven if Mr. Berryhill had been more than a one-time courier, as the district court believed, he could still be entitled to an adjustment because he was less culpable than the other participants.").

Mr. Berryhill contends that he satisfies all four prongs of the plain-error standard. At prong two, he argues that the sentencing court's error was clear or obvious because the Guidelines plainly state that a mitigating-role adjustment is determined by comparing the defendant's role to those of the other participants in the crime at issue and because caselaw from our circuit—specifically, *United States v. Yurek*, 925 F.3d 423 (10th Cir. 2019), and *United States v. Delgado-Lopez*, 974 F.3d 1188 (10th Cir. 2020)—clearly confirms this requirement.

Notably, in response, the government does not contend that the district court in fact compared Mr. Berryhill's role to those of other actual participants. Nor does the government argue that the district court was legally permitted to conduct its mitigating-role, comparative analysis by comparing Mr. Berryhill's role to that of a hypothetical average drug courier. Instead, the government argues that, under the circumstances of this case, "the district court had no duty to evaluate the § 3B1.2

14

factors or conduct a relative-culpability analysis" at all.  Aplee.'s Resp. Br. at 14.

And, as the government reasons, because the court did not actually attempt to

conduct a relative-culpability analysis under § 3B1.2 in the first place, it necessarily

did not commit legal error while performing that analysis.

Specifically, the government contends that "because the district court *did not*

*believe* [Mr. Berryhill's] predicate claim that he was a mere courier, its obligation to

conduct the legal analysis was never triggered because no *credible* facts existed for it

to evaluate or analyze." *Id.*; *see id.* at 13 ("Yet, if a district court deems unbelievable

a defendant's bald assertion that he is merely a drug courier, the court 'is not required

to proceed to analyze his relative culpability.'" (quoting *Delgado-Lopez*, 974 F.3d at

1195)).  "Stated differently, [the government reasons that] the district court's

negative credibility finding obviated any obligation to conduct a relative-culpability

analysis or apply the § 3B1.2 factors." *Id.* at 15.  Accordingly, the government

maintains that because the court was not called upon to conduct a relative-culpability

analysis in the first place, it necessarily "did not apply the wrong legal test in denying

a mitigating role adjustment." *Id.* at 9 (capitals omitted).  In making this argument,

the government relies on language in our opinion in *Delgado-Lopez*, which, at first

blush at least, does appear to lend some support to its position: there, the court stated,

"if the district court deems *in*credible [the defendant's] testimony about his role [as a

mere courier] . . . , it is not required to proceed to analyze his relative culpability."

974 F.3d at 1195 (emphasis added).

15

In his reply brief, Mr. Berryhill takes up the government's challenge. He notes that "the government . . . agree[s] that the district court did not apply the correct test for determining whether he was entitled to the mitigating role adjustment." Aplt.'s Reply Br. at 1. Therefore, he argues, "the dispute in this case is narrow[:] . . . whether the court was required to apply that test." *Id.* He then attempts to distinguish his circumstances from those of the defendant in *Delgado-Lopez*—for example, by arguing that his request for a mitigating-role adjustment was based on more than just his claim that he was a mere a drug courier but rather was supported by credible evidence outside of his own statements.

**D**

We hold that the district court committed legal error at prong one of the plain error standard when it failed to compare Mr. Berryhill's role in the offense to those of other participants in the same criminal activity—that is, to conduct a relative-culpability analysis. And we do not read *Delgado-Lopez* as commanding a different outcome. Nevertheless, some of the language of *Delgado-Lopez* is admittedly less than pellucid and open to being misinterpreted in a manner that would support the court's erroneous decision to forgo a relative-culpability analysis on the facts of this case. Though we clarify herein the import of *Delgado-Lopez*, we cannot say that, operating against the backdrop of that case, the court's error was clear or obvious. Accordingly, we conclude that Mr. Berryhill cannot satisfy the second prong of the plain-error standard. And absent a sufficient showing on this second prong, Mr.

16

Berryhill's plain-error challenge must necessarily fail.  Therefore, on that basis, we uphold the district court's sentencing judgment.

**1**

At prong one, the district court erred by not undertaking a mitigating-role-adjustment analysis that involved comparing Mr. Berryhill's role to that of others involved in the same criminal activity.  A sentencing court must compare a defendant's culpability to that of other participants actually involved in the criminal activity at issue in conducting a mitigating-role-adjustment analysis.

Our explanation begins with the Guidelines.  Recall that the relevant provision instructs, "[i]f the defendant was a minor participant in any criminal activity, decrease [the offense level] by 2 levels."  U.S.S.G. § 3B1.2(b).  And significantly, the Guidelines define "minor participant" in relative terms: "a defendant described in Application Note 3(A) who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal."  *Id.* § 3B1.2 cmt. n.5.  The prefatory comment to the Guidelines' instruction on how to evaluate whether a mitigating-role adjustment applies explains that a mitigating-role adjustment is available "for a defendant who plays a part in committing the offense that makes him *substantially less culpable* than the average participant in the criminal activity"; this language, too, speaks in relative terms.  *Id.* cmt. n.3(A) (emphasis added).

Our caselaw interpreting the Guidelines affirms that a sentencing court must evaluate whether a defendant is eligible for a mitigating-role adjustment by

17

comparing that defendant's role in the offense to those of other participants.

Discussing a 2015 amendment to the Guidelines commentary (which is the

amendment that added the list of non-exhaustive factors for courts to consider in

undertaking their analysis), we stated "[t]he amendment effectively revised the

commentary to specify that *courts are to determine whether a defendant is eligible*

*for a § 3B1.2 reduction by comparing the defendant with other participants in the*

*same criminal activity*." *United States v. Nkome*, 987 F.3d 1262, 1270 (10th Cir.

2021) (emphasis added).

In *Nkome*, we observed that this amendment was designed to preclude the kind

of comparison-to-a-hypothetical that the district court engaged in here. *See id.*

(noting that the Guidelines were amended in 2015 in part to clarify that the

defendant's role should be compared to others actually participating in the same

criminal activity, not the typical person committing the same type of crime). The

Sentencing Commission, we wrote, rejected an approach that certain circuits had

theretofore taken, wherein they conducted their mitigating-role-adjustment analysis

by comparing the defendant's role to that of an "average participant"—with the

understanding that "the 'average participant' . . . include[d] the 'universe of persons

participating in similar crimes'" rather than "*only* those persons who *actually*

*participated* in the criminal activity at issue in the defendant's case." *Id.* at 1270–71

(emphasis added) (quoting U.S.S.G. Supp. to App. C., Amend. 794 (Nov. 1, 2015)).

The Commission's amendment "'revis[ed] the commentary to specify that, when

determining [the applicability of a] mitigating-role adjustment, the defendant is to be

18

compared with other participants "in the criminal activity"'—that is, those involved in the same criminal activity at issue in the defendant's case." *Id.* at 1271 (second alteration in original) (quoting U.S.S.G. Supp. to App. C).

Even prior to the 2015 amendment, our cases embodied a congruent position concerning the proper comparators for the relative-culpability analysis. *See United States v. Ayers*, 84 F.3d 382, 383 (10th Cir. 1996) ("Section 3B1.2 'vests the district court with discretion to grant a base offense level reduction if it finds a defendant is less culpable relative to other participants *in a given offense*.'" (emphasis added) (quoting *United States v. Santistevan*, 39 F.3d 250, 254 (10th Cir. 1994))); *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1277 (10th Cir. 2004) ("[W]e have held that the inquiry must 'focus upon the defendant's knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved *in the offense*.'" (emphasis added) (quoting *United States v. Calderon–Porras,* 911 F.2d 421, 423–24 (10th Cir.1990))). And, after the amendment, in *Yurek*, we underscored that the relative-culpability analysis must be conducted using as comparators participants in the same criminal activity. Specifically, we held that the sentencing court had committed error because the court "did not consider [the defendant's] culpability relative to other participants in the scheme." 925 F.3d at 446.

Indeed, as recently as this year, we underscored that "[t]he 'crux' of a mitigating-role adjustment is the 'defendant's relative culpability.'" *D.A.*, 132 F.4th at 1173 (quoting *Yurek*, 925 F.3d at 446). In *D.A.*, we further clarified that "the

19

Guidelines direct district courts, in considering a mitigating-role adjustment, to assess the defendant's culpability relative to other actors *within the scope of relevant conduct of the defendant's offense.*"  *Id.* (emphasis added).  We explained that although we assumed the scope of relevant conduct is a legal determination, it is "configured by key factual findings" about the specific defendant and the other actual participants in the specific events leading to the charged offense.  *Id.* at 1175.

**2**

The preceding survey of legal authority supports our conclusion that the district court here was required to analyze Mr. Berryhill's eligibility for a mitigating-role adjustment by comparing his role in the offense to those of other actual participants in his specific criminal activity.  By forgoing this prescribed type of relative-culpability analysis in denying Mr. Berryhill a mitigating-role adjustment—and, instead, comparing Mr. Berryhill to a hypothetical average drug courier—the district court committed legal error.

We do not read *Delgado-Lopez* as commanding a different outcome.  According to the government, *Delgado-Lopez* supports its argument that the district court here did not legally err.  Drawing support from *Delgado-Lopez*, the government contends that the district court did not need to engage in a relative-culpability analysis because the court did not find Mr. Berryhill's statement that he was merely a mule to be credible.  We do not question the government's factual assessment that the district court did not believe Mr. Berryhill's description of the facts underlying his mitigating-role request.  But we do disagree with the government's legal conclusion

20

that *Delgado-Lopez* permitted the district court to forgo a relative-culpability analysis simply because it found Mr. Berryhill's description unworthy of belief (i.e., lacking credibility).

We turn to a discussion of *Delgado-Lopez*. There, the defendant, Mr. Delgado-Lopez, "pled guilty to possession with intent to distribute methamphetamine or a mixture containing methamphetamine." 974 F.3d at 1190. In connection with his sentencing, he sought a mitigating-role adjustment, asserting that he had lawful employment and that his only involvement in the criminal activity was acting on several occasions "as a drug courier." *Id.* at 1191. "At the sentencing hearing, the district court concluded that [Mr.] Delgado-Lopez was not entitled to a minor-role reduction." *Id.* "[T]he district court noted the only evidence that [Mr.] Delgado-Lopez was merely a courier was his own testimony." *Id.* at 1192. In order to assess the veracity of Mr. Delgado-Lopez's testimony, the court questioned Mr. Delgado-Lopez and then "speculated extensively about the financial wisdom of the scheme." *Id.* at 1191. Based on its own back-of-the-envelope calculations and subsequent assessment of the financial motives at play, the court decided that Mr. Delgado-Lopez's testimony was not credible. *See id.* at 1191–92. As a result, it concluded that there was no evidence supporting Mr. Delgado-Lopez's requested mitigating-role adjustment. *See id.*

On appeal, "we vacate[d] his sentence and remand[ed] to the district court." *Id.* at 1190. Keeping with precedent, we expressly acknowledged that "[a] sentencing court considering a § 3B1.2(b) adjustment must consider 'culpability

21

relative to other participants in the scheme.'" *Id.* at 1195 (quoting *Yurek*, 925 F.3d at 446). But in determining that vacatur was required, we zeroed in on "[Mr.] Delgado-Lopez['s] argu[ment] [that] the court erred by concluding he was not credible based on speculation about the finances of his courier trips." *Id.* at 1193. We agreed with this argument.

Specifically, regarding the district court's credibility finding, we noted that this "determination was based on pure speculation about the economics of the drug-trafficking scheme," and, consequently, that "[t]he court erred by relying on its own speculation in finding that [Mr.] Delgado-Lopez was not credible." *Id.* at 1193–94. Critically, however, in counseling the court regarding next steps, we stated the following:

> On remand, if the district court deems *in*credible [Mr.] Delgado-Lopez's testimony about his role (without resorting to unwarranted speculation or otherwise committing legal error), it is not required to proceed to analyze his relative culpability. *See Salazar-Samaniega*, 361 F.3d at 1278. But if it does credit [Mr.] Delgado-Lopez's testimony that he was merely a drug courier, it must evaluate his culpability relative to the other participants in the scheme.

*Id.* at 1195 (emphasis added).

In effect, the government reads this remand direction in *Delgado-Lopez* as contemplating two possible steps in the decisional process regarding mitigating-role adjustments. The first step—which focuses solely on the credibility of the defendant's description of his role in the offense—may, according to the government, conclusively determine the § 3B1.2 inquiry, obliging the court to conduct no further

22

analysis before denying the reduction.  *See* Aplee.'s Resp. Br. at 18 ("[T]he district court's obligation to evaluate the § 3B1.2 factors or to conduct a relative-culpability analysis was never triggered because no credible facts existed for the district court to evaluate or analyze.").  Under the government's logic, the second step of the process would *only* need to be undertaken if the court answers the credibility question in the affirmative.  That is, if and only if the court determines that the defendant's description is credible is the court obliged to evaluate the evidence employing the relative-culpability test from § 3B1.2 and decide whether the defendant actually qualifies for a mitigating-role adjustment.  *See id.*

In our view, however, *Delgado-Lopez*'s language is not properly read as explicitly or impliedly establishing such a two-step process—which, remarkably, would effectively condition the undertaking of the relative-culpability analysis on an antecedent positive credibility determination.  For starters, *Delgado-Lopez* did not expressly say that it was establishing or embracing such a two-step process.  To the contrary, *Delgado-Lopez* expressly acknowledged that "[a] sentencing court considering a § 3B1.2(b) adjustment must consider 'culpability relative to other participants in the scheme.'"  *Id.* at 1195 (quoting *Yurek*, 925 F.3d at 446).

To be sure, snippets of *Delgado-Lopez*'s language are not pellucid and could be misinterpreted as establishing, as the government would have it, such a conditional process; more specifically, that language probably could be (mistakenly) read as conditioning the performance of the relative-culpability analysis on an antecedent positive credibility finding.  *See Delgado-Lopez*, 974 F.3d at 1195 ("On

23

remand, *if* the district court deems *in*credible [Mr.] Delgado-Lopez's testimony about his role (without resorting to unwarranted speculation or otherwise committing legal error), it is *not* required to proceed to analyze his relative culpability.  But *if* it does credit [Mr.] Delgado-Lopez's testimony that he was merely a drug courier, it *must* evaluate his culpability relative to the other participants in the scheme." (emphases added) (citation and footnote omitted)).  Indeed, in rebuffing the dissent, the *Delgado-Lopez* majority appeared to use conditional language, stating that "even if we agreed that the district court did, in fact, base its [mitigating-role] decision on the number of trips taken and the quantity of drugs transported[,] . . . the district court would then be required *either* to assess [Mr.] Delgado-Lopez's 'culpability relative to other participants in the scheme,' *or* to properly find his testimony *in*credible."  *Id.* at 1196 (emphases added) (citation omitted) (quoting *Yurek*, 925 F.3d at 446).

However, we are convinced that adopting the government's reading of *Delgado-Lopez* would be misguided and distort its overall import.  Notably, the one Tenth Circuit case—indeed, the only case—that *Delgado-Lopez* cited in connection with its purportedly conditional language was *Salazar-Samaniega*.  *See Delgado-Lopez*, 974 F.3d at 1195.  But *Salazar-Samaniega* shows precisely why our caselaw does not establish a bifurcated decision tree.  In that case, which also involved a request for a mitigating-role adjustment under § 3B1.2, we expressly acknowledged the obligation of the sentencing court to conduct a relative-culpability analysis.  *See Salazar-Samaniega*, 361 F.3d at 1277.  Akin to *Delgado-Lopez*, the "record" there contained "little information about the scheme in which [the defendant] was

24

involved," and "[t]he only evidence" supporting the defendant's claim of a limited role in the offense was the defendant's "own testimony." *Id.* at 1277–78. Importantly, we determined that "the district court could quite reasonably have found [that testimony] not credible." *Id.* at 1278. But we nevertheless did not view that adverse credibility conclusion as definitively foreclosing the possibility of a mitigating-role enhancement; more specifically, we did not view that adverse credibility conclusion as eliminating the need to conduct a relative-culpability analysis. *See id.* at 1277–78. Indeed, we considered the limited record evidence and *conducted such an analysis. See id.*

We observed that "[a] defendant's own testimony that others were more heavily involved in a criminal scheme may not suffice to prove his minor or minimal participation, even if uncontradicted by other evidence." *Id.* at 1278. Considering the sparse record evidence, we concluded that the defendant's testimony was insufficient and denied the mitigating-role adjustment. *See id.* At bottom then, *Salazar-Samaniega* cannot be read as adopting a two-step process for resolving a request for a mitigating-role adjustment that effectively conditions the performance of the relative-culpability analysis on an antecedent positive credibility determination. Consequently, we are hard pressed to conclude that *Delgado-Lopez* would have cited as supportive authority—and solely relied on—*Salazar-Samaniega* if it intended itself to establish or embrace such a two-step process. In our view, *Delgado-Lopez* did not harbor such an intent and did not in fact adopt such a two-step process.

25

Furthermore, though we have acknowledged that some snippets of *Delgado-Lopez*'s language are not pellucid in their meaning and could be (misguidedly) read as being compatible with such a two-step process, we must "endeavor to interpret our cases in a manner that permits them to coexist harmoniously." *United States v. Mier-Garces*, 967 F.3d 1003, 1018 (10th Cir. 2020) (quoting *United States v. Hansen*, 929 F.3d 1238, 1254 (10th Cir. 2019)). And the cases are legion in our circuit in which we have set forth the proper mitigating-role analysis without mention or application of such a two-step process; instead, our cases have recognized that § 3B1.2's relative-culpability analysis is always a required component of a proper mitigating-role adjustment analysis. *See, e.g.*, *United States v. Durham*, 139 F.3d 1325, 1336 (10th Cir. 1998) (engaging in relative-culpability analysis); *United States v. Salas*, 756 F.3d 1196, 1207–08 (10th Cir. 2014) (reviewing relative culpability despite disbelief of defendant's statement that he was only a drug courier). The same is true in our sibling circuits. *See, e.g.*, *United States v. Jeffers*, 329 F.3d 94, 103 (2d Cir. 2003) (affirming the district court's denial of a minor-role adjustment by "reject[ing] [the defendant's] claim" about his participation in the affair *and* evaluating the evidence of his role by looking to other content in the PSR); *United States v. Chichande*, 113 F.4th 913, 922 (9th Cir. 2024) (affirming a district court's denial of a minor-role adjustment by engaging in relative-culpability analysis despite concluding that the defendant's assertions "were not credible").

Given that the effect of such a two-step process would be truly remarkable——conditioning the performance of § 3B1.2's relative-culpability analysis on an

26

antecedent positive credibility determination—we are confident that, if that process were part of our caselaw, we would have said so somewhere other than in the snippets of less-than-pellucid language from *Delgado-Lopez*. Therefore, because we are able—in a principled way—to do so, we construe this unclear language—as well as *Delgado-Lopez* as a whole—as being consistent with this legion of cases. In other words, acting to ensure that our cases "coexist harmoniously," we read *Delgado-Lopez* as congruent with our other precedential cases, which require courts, in ruling on requests for mitigating-role adjustments, to conduct § 3B1.2's relative-culpability analysis, even if they conclude that a portion or all of a defendant's description of his role is incredible.

It is true that a negative credibility finding regarding a defendant's description of his role in the offense may impact the content and shape of a relative-culpability analysis. But it should not lead a court to forgo this analysis altogether and erroneously compare the defendant's role in the offense to that of a hypothetical defendant committing the same crime. Quite apart from any description of his role in the offense that a defendant offers, ordinarily the record—including, at a minimum, the presentence report—will provide a universe of facts that the court may assess in conducting the relative-culpability analysis that § 3B1.2 contemplates. As the panel demonstrated in *Salazar-Samaniega*, where the "record" offers "little information about the scheme in which [the defendant] was involved" that is credible, the court should still conduct the relative-culpability analysis that § 3B1.2 contemplates. *Salazar-Samaniega*, 361 F.3d at 1277. In this regard, recall that Mr. Berryhill

27

maintains that, even if the district court did not find his description of his role in the offense believable, the court should have still assessed the record evidence under the proper test (i.e., the relative-culpability test).  *See* Aplt.'s Opening Br. at 11 ("[E]ven if Mr. Berryhill had been more than a one-time courier, as the district court believed, he could still be entitled to an adjustment because he was less culpable than the other participants."); Aplt.'s Reply Br. at 1–2 (" Mr. Berryhill's argument was more extensive and comprehensive than he was 'only a mule' in the conspiracy, and most of his arguments did not require the court to believe he was one. Worse still for the government's argument, there were uncontested facts in the presentence report (PSIR) supporting his arguments that the court, like the government here, did not address.").

Therefore, because the district court here did not conduct the relative-culpability analysis that § 3B1.2 contemplates—but rather compared Mr. Berryhill's role in the offense to a hypothetical average drug courier—it erred.  And, notwithstanding snippets of language in *Delgado-Lopez*, the court was not relieved of its obligation to conduct that relative-culpability analysis by its doubts regarding the credibility of Mr. Berryhill's description of his role in the offense.  Accordingly, Mr. Berryhill has satisfied the first prong of the plain-error test—that is, error *vel non*.

**3**

Satisfying the first prong of the plain-error standard, however, is only the beginning of a difficult journey that Mr. Berryhill must travel to obtain relief.  That is, he must show that he can "successfully run the gauntlet created by our rigorous

28

plain-error standard of review." *McGehee*, 672 F.3d at 876. We underscore that this standard has four prongs, and the party invoking the standard must satisfy each of them. *See Rosales-Miranda*, 755 F.3d at 1258. We conclude that Mr. Berryhill cannot satisfy the second prong of the standard—that is, he cannot show that the court's error was clear or obvious. Consequently, his plain-error challenge to the district court's mitigating-role decision must fail, and we need not (and thus do not) address the remaining two prongs of the plain-error test.

As we have shown *supra*, *Delgado-Lopez* is best read as being congruent with our other precedent that mandates § 3B1.2's relative-culpability analysis, irrespective of the court's view concerning the credibility of the defendant's description of his role in the offense. Accordingly, *Delgado-Lopez* did not relieve the court here of its obligation to conduct that relative-culpability analysis despite its doubts regarding the believability of Mr. Berryhill's description of his role in the offense. The court's decision to forgo that relative-culpability analysis and compare Mr. Berryhill's role in the offense to that of a hypothetical drug courier was thus error. However, at the second prong of the plain-error test, that error is not per se our focus. Rather, our focus at prong two is on whether such an error would have been clear or obvious to a district court prior to this decision, where such a court was necessarily ruling against the backdrop of our controlling mitigating-adjustment precedent—most notably, for present purposes, *Delgado-Lopez*. We answer that question in the negative.

We conclude that the snippets of *Delgado-Lopez*'s language that we have highlighted and discussed *supra* were sufficient to muddy the import of our

29

controlling precedent for circumstances such as this where the district court finds the defendant's description of his role in the offense incredible (that is, not worthy of belief). More specifically, we cannot conclude that, due to the less-than-pellucid language in *Delgado-Lopez*, it would have been clear or obvious to a district court prior to our clarification herein that it could not forgo the relative-culpability analysis that § 3B1.2 contemplates even if it found the defendant's description of his role in the offense incredible and, instead, compare the defendant's role in the offense to that of a hypothetical defendant guilty of the same type of offense. Stated otherwise, though we have clarified here that *Delgado-Lopez*—like the rest of our precedent— does not permit courts to condition the performance of § 3B1.2's relative-culpability analysis on an antecedent positive credibility determination, prior to this clarification, the district court did not commit clear or obvious error in effectively imposing such a condition and forgoing the relative-culpability analysis.[3]

---

[3] We recognize that our analysis of the second prong does not follow the most frequently occurring pattern of prong-two, plain-error analysis. Ordinarily, we look to see if "the Supreme Court or this court [has] addressed the issue," concluding that the error is clear or obvious if it is contrary to a decision addressing the issue in either controlling forum. *United States v. Finnesy*, 953 F.3d 675, 684 (10th Cir. 2020) (quoting *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003)). However, our approach here is still consistent with the plain-error rubric and, in particular, second-prong analysis. We have explained that the fundamental inquiry in the second prong of plain-error review is whether the error "is contrary to *well-settled* law." *Id.* (emphasis added) (quoting *United States v. Garcia*, 946 F.3d 1191, 1202 (10th Cir. 2020)). And our analysis herein leads us to conclude that snippets of *Delgado-Lopez*'s language had the unfortunate side effect of making our law of mitigating-role adjustments appear less than well-settled. Likewise, we have explained that the first two prongs require an error "so clear or obvious that it *could not be subject to any reasonable dispute*." *United States v. Courtney*, 816 F.3d 681, 684 (10th Cir. 2016) (emphasis added). Standing alone and before our clarification,

30

Lest there be any doubt, however, our holding illuminates the import of

*Delgado-Lopez* and its snippets of language: hereinafter, there should be no room for

uncertainty regarding its alignment with our precedent that requires a relative-

culpability analysis.  In short, courts are obliged to conduct the relative culpability

analysis that § 3B1.2 requires when a defendant requests a mitigating-role

adjustment, irrespective of the court's doubts concerning the credibility of the

---

*Delgado-Lopez*'s remand instruction and its related language may have plausibly
given rise to just such a reasonable dispute.

It is noteworthy that we have framed our analysis of prong two here in a
manner akin to our approach in prior cases when the authority the appellant seeks to
rely on is a statute or regulation—specifically, focusing on whether there is an
ambiguity in the authority such that it fails to "speak to" the relevant issue "in a
sufficiently clear or obvious manner." *Finnesy*, 953 F.3d at 697; *see also Ruiz-Gea*,
340 F.3d at 1188 (deciding that the defendant failed to satisfy prong two because "the
choice between two possible meanings of [the] statute is so open to debate that the
rule of lenity comes into play").  Before our clarification, *Delgado-Lopez* prevented
our caselaw from uniformly speaking to this issue in a sufficiently clear or obvious
manner.

Additionally, we have held that an appellant's challenge fails at prong two
when the case he seeks to rely upon actually muddies, rather than clarifies, the
appropriate legal rule.  In *United States v. Thornburgh*, 645 F.3d 1197 (10th Cir.
2011), we held that the defendant could not satisfy prong two because the Supreme
Court case he sought to rely on had, instead of creating clear law, "caused
considerable . . . confusion" and generated "widely differing interpretations" of the
appropriate legal rule.  *Id.* at 1209.  Similarly, in *United States v. Searles*, 412 F.
App'x 165 (10th Cir. 2011), a panel of our court in a non-precedential, but
persuasive, decision reasoned that there was a failure at prong two because "the only
thing that [wa]s 'clear and obvious' about [the otherwise-relevant case] [wa]s that it
'raise[d] as many issues as it resolve[d]." *Id.* at 167 (quoting *United States v. Brown*,
553 F.3d 768, 783 (5th Cir. 2008)).  Regrettably, our remand instruction in *Delgado-
Lopez* and its related language created similar confusion.

31

defendant's description of his role in the offense. Future courts that omit this analysis will have committed error that is clear and obvious.

### III

In conclusion, the district court here committed legal error by forgoing § 3B1.2's relative-culpability analysis—which would have entailed comparing Mr. Berryhill's role in the offense to those of other actual participants in the criminal activity at issue—and, instead, comparing Mr. Berryhill's role to that of a hypothetical drug courier. However, this error was not clear or obvious at the time of this appeal. Consequently, Mr. Berryhill's sentencing challenge fails because he has not met his burden of establishing the second prong of the plain-error standard (i.e., clear or obvious error). Accordingly, we **AFFIRM** the district court's sentencing judgment.