FILED
United States Court of Appeals
Tenth Circuit

September 16, 2025

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 24-7050

MARCO ANTONIO NARANJO-
AGUILAR,

Defendant - Appellant.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. NO. 6:22-CR-00020-RAW-1)**

_____

M. Edith Cunningham, Assistant Federal Public Defender (Jon M. Sands, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, District of Arizona, Tucson, Arizona, for Defendant-Appellant.

Luke Rizzo Cascio, Assistant United States Attorney (Christopher J. Wilson, United States Attorney, with him on the brief), Office of the United States Attorney, Eastern District of Oklahoma, Muskogee, Oklahoma, for Plaintiff-Appellee.

_____

Before **HARTZ**, **MATHESON**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal involves a criminal sentence. In deciding on the sentence, the district court can reduce the guideline range when the defendant is a minor participant. U.S.S.G. § 3B1.2(b). But a defendant's participation can be considered *minor* only if most other participants bear greater culpability. U.S.S.G. § 3B1.2 cmt. n.5. The main question in the appeal is whether the district court plainly erred by failing to consider more culpable participants. We answer *no*.

1.    **The defendant is convicted and sentenced after transporting methamphetamine.**

The defendant, Mr. Marco Naranjo-Aguilar, drove a car containing almost 50 pounds of methamphetamine. For this act, he was convicted of possessing methamphetamine with intent to distribute. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A).

To determine the appropriate sentence, the district court considered the sentencing guidelines. *See* 18 U.S.C. § 3553(a)(4). These guidelines allow the court to adjust the offense level downward when the defendant played a minor role. U.S.S.G. § 3B1.2(b).

Mr. Naranjo-Aguilar requested this downward adjustment, alleging a minor role as a courier in a drug deal. In support, he submitted a proffer identifying three other participants. The court acknowledged the proffer, but declined to give the downward adjustment. Without the adjustment, the

guideline range was 235–293 months. Applying this range, the district court imposed a sentence of 235 months.

Mr. Naranjo-Aguilar argues that (1) he should have obtained the downward adjustment as a minor participant and (2) the sentence was procedurally and substantively unreasonable.

## 2. The district court didn't plainly err by denying a downward adjustment.

Mr. Naranjo-Aguilar argues that (1) the district court committed legal errors in denying the downward adjustment and (2) the alleged errors were prejudicial. We reject both arguments.

### a. These arguments are reviewable under the plain-error standard.

Mr. Naranjo-Aguilar didn't preserve these arguments in district court.

Granted, he did object to a recommendation in the presentence report for the district court to deny a downward adjustment. But he's appealing based on the district court's explanation, not what was said in the presentence report, and he didn't object to the district court's explanation for the sentence. So Mr. Naranjo-Aguilar didn't preserve the legal arguments that he's making on appeal. *See United States v. Yurek*, 925 F.3d 423, 444–45 (10th Cir. 2019) (concluding that the defendant didn't preserve her challenge to the denial of a mitigating-role adjustment because she was "alleging an error in the district court's explanation" rather than the "content of the presentence report").

3

Given the failure to preserve the appellate arguments, we apply the plain-error standard. *Id.* at 445. Under this standard, we consider

- whether the district court erred,

- whether an error was clear or obvious,

- whether an error affected the defendant's substantial rights, and

- whether an error seriously affected the fairness, integrity, or reputation of the judicial proceedings.

*Id.*

We conclude that (1) the district court didn't err and (2) the alleged errors wouldn't have affected the defendant's substantial rights.

**b.    The district court didn't legally err.**

In challenging the denial of a downward adjustment, Mr. Naranjo-Aguilar argues that the district court legally erred by disregarding his proffer and limiting the inquiry to participants who had acted inside the judicial district.

The district court acknowledged the proffer, but said: "Absent any knowledge or evidence to the contrary, the Defendant was acting alone when transporting a large quantity of drugs in the Eastern District of Oklahoma." R. vol. 3, at 80. Mr. Naranjo-Aguilar interprets this sentence as proof that the district court overlooked his proffer and disregarded participants in other judicial districts.

The district court didn't need to explain why it declined Mr. Naranjo-Aguilar's request for a downward adjustment. *United States v. Nkome*, 987 F.3d 1262, 1273 (10th Cir. 2021). But the court did provide an explanation. So we must consider whether the explanation entailed a legal error. *Id.*

Mr. Naranjo-Aguilar argues that the district court overlooked evidence consisting of a statement in the proffer that others had participated. But what did the district court mean when it said that there wasn't *evidence* of others' actions? We've said that "[a] proffer is not evidence, *ipso facto*." *United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997) (italics in original).[1] Given our characterization of proffers, the district court might have meant only that Mr. Naranjo-Aguilar hadn't presented any testimony or exhibits identifying other participants.

Mr. Naranjo-Aguilar argues, however, that the district court overlooked the proffer. This argument appears questionable, for the court had referred to the proffer earlier in the explanation. Given this reference, the court was apparently aware of the proffer when stating that there wasn't any evidence of other participants.

At most, Mr. Naranjo-Aguilar's characterization of the wording suggests an ambiguity. The court might have forgotten that Mr. Naranjo-

---

[1]     Mr. Naranjo-Aguilar states that his "proffer or testimony is *evidence*." Appellant's Reply Br. at 2 (italics in original). But he doesn't provide any authority for treating his proffer as evidence. And he didn't submit any testimony. In fact, his proffer was not signed or verified.

Aguilar had supplied a proffer, or the court might simply have distinguished between a proffer and other forms of evidence. When we're confronted with ambiguities, we ordinarily presume that the district court intended the meaning that would have been legally correct. *United States v. Simpson*, 845 F.3d 1039, 1051 (10th Cir. 2017); *see also United States v. Nacchio*, 555 F.3d 1234, 1242 (10th Cir. 2009) (en banc) ("When a district court's language is ambiguous . . . it is improper for the court of appeals to presume that the lower court reached an incorrect legal conclusion." (ellipsis in original) (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 386 (2008))). We thus presume from the explanation that the court considered the defendant's proffer.

Mr. Naranjo-Aguilar also focuses on the statement that he was acting alone in the Eastern District of Oklahoma. For Mr. Naranjo-Aguilar, this statement shows disregard of participants in other districts. But again, the district court's statement is subject to two different interpretations.

The first interpretation treats Mr. Naranjo-Aguilar's conduct in the Eastern District of Oklahoma as the act of driving a car stuffed with methamphetamine. Mr. Naranjo-Aguilar embraces a different interpretation, arguing that the district court overlooked any actions outside the Eastern District of Oklahoma. For this interpretation, Mr. Naranjo-Aguilar relies on his proffer, which referred to the individuals

6

who had rented the car, requested transportation of the drugs, and loaded them into the car.

Under the first interpretation, the court could reasonably view the statement as correct: Mr. Naranjo-Aguilar was the only person who conducted activities in the Eastern District of Oklahoma. He points out that someone else rented the car in Arkansas. But that rental took place outside the Eastern District of Oklahoma; so the district court's statement could plausibly be correct under the first interpretation.

Under the second interpretation, the court might have erred by disregarding more culpable participants just because they had committed their crimes elsewhere. But again, we resolve ambiguities in judicial statements by presuming that the district court intended the meaning that would have been legally correct. *See* p. 6, above. We thus interpret the district court's statement as a simple acknowledgment that Mr. Naranjo-Aguilar was the only participant conducting activities in the Eastern District of Oklahoma.[2]

---

[2]    The result might be different when it's "apparent" from the explanation that the district court relied on an incorrect legal standard. When a legal error is apparent, we must remand when we're uncertain whether the error resulted in an incorrect factual finding. *United States v. Herriman*, 739 F.3d 1250, 1262 (10th Cir. 2014). Here, however, the existence of a legal error isn't apparent in light of the ambiguity of the district court's explanation.

### c. The alleged legal errors wouldn't have been prejudicial.

Assuming the existence of legal errors, Mr. Naranjo-Aguilar argues that they would have created prejudice by preventing a downward adjustment.[3] As noted above, we conclude that the district court didn't commit a legal error. *See* Part 2(b), above. But even if Mr. Naranjo-Aguilar had shown a legal error, he would need to show prejudice because he didn't alert the district court to the alleged errors. *United States v. Yurek*, 925 F.3d 423, 446 (10th Cir. 2019). To satisfy this burden, he would need to show a reasonable probability of a downward adjustment absent the legal error. *Id.*

Mr. Naranjo-Aguilar bases his argument for prejudice on his proffer, which identifies three individuals:

1. El Siete, who requested the transportation of drugs from Arizona,

2. an unidentified person who placed luggage (containing drugs) in the car, and

3. an unidentified person who rented the car.[4]

---

[3]  The government interpreted Mr. Naranjo-Aguilar's opening brief to include a separate argument that the district court had committed clear error in its findings. But Mr. Naranjo-Aguilar clarifies in his reply brief that the cited discussion involves the issue of prejudice, not a distinct argument that the district court committed clear error.

[4]  The presentence report identifies this person as Jesus Corral, stating that he rented the car in Arkansas.

Supp. R. vol. 1, at 6. But Mr. Naranjo-Aguilar didn't present any evidence about the participation of these individuals or their greater culpability.

In deciding whether to give a downward adjustment, the district court would have had to compare the relative culpability of Mr. Naranjo-Aguilar and other participants in this crime. *United States v. Berryhill*, 140 F.4th 1287, 1303 (10th Cir. 2025). From this comparison, the court could have assigned a minor role to Mr. Naranjo-Aguilar only if his culpability had been substantially less than that of the average participant. U.S.S.G. § 3B1.2 cmt. n.3(A). In comparing the culpability of Mr. Naranjo-Aguilar and other participants, the district court would have needed to make a factual determination, with Mr. Naranjo-Aguilar bearing the burden to show his lesser culpability by a preponderance of the evidence. *United States v. Nkome*, 987 F.3d 1262, 1268–69 (10th Cir. 2021).

Mr. Naranjo-Aguilar appears to make two assumptions: (1) his role as a courier would render him substantially less culpable than other participants, and (2) other individuals would have occupied a greater role by planning the drug deal and making the arrangements. Both assumptions are misguided.

First, status as a courier doesn't automatically entitle a defendant to a downward adjustment. *United States v. Eckhart*, 569 F.3d 1263, 1276 (10th Cir. 2009); *United States v. Rangel-Arreola*, 991 F.2d 1519, 1524 (10th Cir. 1993).

9

Second, it's not enough for a defendant to show that he was the least culpable participant: He must show that he was substantially less culpable than the average participant. U.S.S.G. § 3B1.2 cmt. n.3(A).

A criminal transaction may entail multiple roles. Here, for example, Mr. Naranjo-Aguilar identifies three other individuals: the person who requested transportation of the drugs (El Siete), the person who rented the vehicle (identified in the presentence report as Jesus Corral), and the unidentified person who loaded the drugs.

To compare the culpability of Mr. Naranjo-Aguilar and these individuals, the district court needed to consider multiple factors, including these five:

1.  the degree to which the defendant understood the structure and scope of the criminal activity,

2.  the degree to which the defendant engaged in the plans or organization,

3.  the degree to which the defendant influenced the decisionmaking,

4.  the nature and extent of the defendant's participation in the crime, and

5.  the degree of benefit to the defendant.

U.S.S.G. § 3B1.2 cmt. n.3(C).

Given the paucity of information, the district court would have had difficulty comparing the culpability of the three other individuals to the culpability of Mr. Naranjo-Aguilar. The proffer indicates that Mr. Naranjo-

Aguilar obtained relatively little money from the drug delivery and didn't understand the scope of the crime, engage in the planning, or influence it. Of course, the district court didn't need to credit that proffer. *See United States v. Eckhart*, 569 F.3d 1263, 1276–77 (10th Cir. 2009). But even if the district court had credited the proffer, it didn't say anything about

- possible payments to El Siete, Mr. Corral, or the unidentified person who loaded the drugs or

- their understanding of the crime, their planning or participation in the crime, or their influence on decisionmaking.

The proffer says only that (1) one of the men asked Mr. Naranjo-Aguilar to transport the drugs, (2) the second man rented the car, and (3) the third man loaded the drugs. No evidence exists about any further contributions to the crime or what they received in return.

Mr. Naranjo-Aguilar points out that someone obtained the large quantity of methamphetamine (almost 50 pounds) and planned the sale. Whoever bore those roles would presumably have had substantially greater culpability than Mr. Naranjo-Aguilar. But the district court could reasonably infer that the crime would also have involved other participants, like Mr. Naranjo-Aguilar, who had little involvement in the planning or organization.

When a crime involves multiple tiers of involvement, we compare the roles played by the defendant and the average participant. An example took place in *United States v. Nkome*, 987 F.3d 1262 (10th Cir. 2021). That case

11

involved a scheme where a foreign entity would purport to sell goods through a website. *Id.* at 1264. Americans would be recruited to pose as the sellers. *Id.* When someone bought an item, the money would go to the American seller, who would take a small cut and forward the rest of the money to the organizers. *Id.*

One of the American sellers, called a "money mule," sought a downward adjustment for a mitigating role. *Id.* at 1264–66. The district court denied the downward adjustment, and we upheld the ruling. *Id.* at 1266, 1268, 1284.

We acknowledged that

- the American seller had substantially less culpability than the individuals serving as "leader organizer[s]," who had formed the operation, recruited participants, and directed and controlled the flow of money, and

- the district court could plausibly view the "money mules" as less culpable than the individuals occupying other roles, like the online scammers, identity forgers, and mid-level organizers.

*Id.* at 1278, 1281. But we concluded that this was not the only plausible interpretation: The district court could reasonably equate the culpability of the "money mules" (like the American seller) and the other participants even though some of them had used sophisticated skills in building a website and falsifying documents. *Id.* at 1281.

Here too, the district court could reasonably view Mr. Naranjo-Aguilar's culpability as roughly equivalent to the culpability of El Siete,

12

Mr. Corral, and the person who had loaded the drugs. The court lacked any information about payments to them or their possible roles in the planning.

Certainly one or more individuals had to play a greater role by obtaining the methamphetamine and planning the purchase and resale, just as the "leader organizers" in *Nkome* had played a greater role than the American seller. But the district court there could reasonably infer that the American seller had roughly the same level of culpability as some other participants. *Id*. The district court could take the same approach here, treating the culpability of Mr. Naranjo-Aguilar as roughly equivalent to that of El Siete, Mr. Corral, and the person who had loaded the drugs. Given the reasonableness of this approach, Mr. Naranjo-Aguilar hasn't shown prejudice from the alleged legal errors.

**3.     The sentence was procedurally and substantively reasonable.**

Without the downward adjustment for a minor role, the court imposed a sentence matching the floor of the guideline range. Mr. Naranjo-Aguilar argues that this sentence was procedurally and substantively unreasonable.

**a.     The sentence was procedurally reasonable.**

For his challenge involving procedural reasonableness, Mr. Naranjo-Aguilar argues that the district court gave a deficient explanation for the sentence. But he didn't object to this explanation at the sentencing; and absent an objection, we apply the plain-error standard. *United States v. Wireman*, 849 F.3d 956, 961–62 (10th Cir. 2017). Under this standard, we

13

reverse only if (1) the district court erred and (2) the error was clear or obvious. *See* Part 2(a), above. Here, however, there was no error at all.

Mr. Naranjo-Aguilar argues that the district court failed to consider one of the statutory factors: avoidance of unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(6). For this argument, he points out that the district court didn't specifically refer to this factor. But the district didn't need to refer to this factor because the sentence fell within the guideline range. *United States v. Lente*, 647 F.3d 1021, 1034–35 (10th Cir. 2011).

Though this factor wasn't explicitly discussed, the district court referred to the sentencing guidelines, using them as a benchmark for an appropriate sentence. By using the guideline range, the court inherently considered unwarranted sentencing disparities. *United States v. Gantt*, 679 F.3d 1240, 1248–49 (10th Cir. 2012). So the district court didn't err by failing to consider the possibility of these disparities.

**b.      The sentence was substantively reasonable.**

Mr. Naranjo-Aguilar also argues that the sentence was substantively unreasonable. In addressing this argument, we consider whether the sentence fell within the district court's discretion. *United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018). The court didn't abuse its discretion by imposing a 235-month sentence.

14

A sentence is presumptively reasonable when it falls within the guideline range. *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). And here the sentence not only fell within the guideline range, but fell at the bottom of that range.

To rebut the presumption of reasonableness, Mr. Naranjo-Aguilar argues that

- the guidelines lack an empirical basis for the reliance on drug weight and purity and

- the district court neglected to consider unwarranted sentencing disparities.

We reject these arguments.

**Criticism of the guidelines.** Mr. Naranjo-Aguilar criticizes the guidelines for using drug weight and purity as proxies for culpability. As he points out, various scholars and judges have criticized the guidelines for relying on the weight of drugs and the relative purity of methamphetamine. *See, e.g.*, *United States v. Nawanna*, 321 F. Supp. 3d 943, 952 (N.D. Iowa 2018) (stating that treatment of methamphetamine offenses in the guidelines "can lead to perverse sentencing outcomes"); Erica Zunkel & Alison Siegler, *The Federal Judiciary's Role in Drug Law Reform in an Era of Congressional Dysfunction*, 18 Ohio St. J. Crim. L. 283, 320 (2020) (arguing that a focus on purity in methamphetamine "is not based on empirical evidence, careful study, or national experience"); Steven L. Chanenson, *Booker on Crack: Sentencing's Latest Gordian Knot*, 15

Cornell J.L. & Pub. Pol'y 551, 559 (2006) (stating that the guidelines have been harshly criticized for focusing primarily on the weight of drugs as a proxy for culpability and as a justification to lengthen sentences); Jon O. Newman, *Five Guideline Improvements*, 5 Fed. Sent'g Rep. 190, 190 (1993) (arguing that the drug-weight system should be replaced with a system that correlates drug sentences to the defendant's role in the drug-distribution system). Based on these criticisms, a district court is entitled to deviate from the guidelines. *Spears v. United States*, 555 U.S. 261, 264–66 (2009).

But the authority to deviate doesn't mean that it's an error to follow the guidelines. *See United States v. McCullough*, 457 F.3d 1150, 1171–72 (10th Cir. 2006) (concluding that a sentence isn't rendered substantively unreasonable because the district court refused to deviate from a guideline range despite disagreement with the way that the guidelines have differentiated between crack and powder cocaine); *accord United States v. Mosley*, 53 F.4th 947, 965 (6th Cir. 2022) (concluding that adherence to the guidelines, despite their reliance on the purity of methamphetamine, doesn't render a sentence substantively unreasonable). After all, Congress itself has tied the seriousness of drug offenses to the type of drug and its weight. *See United States v. Williamson*, 953 F.3d 264, 268 (4th Cir. 2020) ("Congress has made plain that the seriousness of a drug offense should be tied to the type and quantity of drug involved."). And disagreement with

16

purity as a benchmark for culpability doesn't render the guidelines irrational in how they differentiate among methamphetamine offenses. *See United States v. Turner*, 93 F.3d 276, 287 (7th Cir. 1996) (concluding that the guidelines' reliance on methamphetamine purity has a "rational basis because the pure product is more concentrated and can be cut into larger quantities"); *United States v. Molina*, 469 F.3d 408, 413–14 (5th Cir. 2006) (concluding that the guidelines' drug-table for methamphetamine has a rational basis despite the heavy impact of purity on the guideline range).

**Consideration of unwarranted sentencing disparities.** Mr. Naranjo-Aguilar also argues that the district court neglected to consider unwarranted sentencing disparities. As noted above, the court did address the potential for sentencing disparities by calculating and using the applicable guideline range. *See* Part 3(a), above. So the district court didn't need to say explicitly that it had considered unwarranted sentencing disparities. *United States v. Nunez-Carranza*, 83 F.4th 1213, 1222 (10th Cir. 2023).

Defense counsel insists that she's unaware of any Arizona case in the last five years where a drug courier was sentenced to more than ten years. But counsel's experience, reflected in her brief, doesn't constitute evidence. *Am. Stores Co. v. Comm'r of Internal Rev.*, 170 F.3d 1267, 1271 (10th Cir. 1999). Nor would that experience be relevant because the guidelines assess unwarranted disparities nationwide rather than in a

particular region. *United States v. Verdin-Garcia*, 516 F.3d 884, 899 (10th Cir. 2008).

To address nationwide disparities, Mr. Naranjo-Aguilar relies on the national average for sentences involving the same offense level and criminal-history category. But the national average doesn't ordinarily shed light on substantive reasonableness. *See United States v. Valdez*, 128 F.4th 1314, 1319 (10th Cir. 2025) (concluding that the national average sentence for offenders in the same offense level and criminal-history category did not shed light on substantive reasonableness because of uncertainty regarding similarities and differences between the defendant and other offenders).

Granted, a national average might be pertinent based on certain factors, including a large upward variance to reach the statutory maximum, the reliance on incorrect facts, and the applicability of a criminal-history category that could encompass a wide range of past criminal conduct. *United States v. Guevara-Lopez*, No. 24-2045, slip op. at 24–25 n.9, 25–26 n.10, 2025 WL 2203620 (10th Cir. Aug. 4, 2025) (to be published). But these circumstances don't apply because

- Mr. Naranjo-Aguilar's criminal-history category was the same as the *Valdez* defendant's (II), *United States v. Valdez*, 128 F.4th 1314, 1316 (10th Cir. 2025),

- Mr. Naranjo-Aguilar's sentence fell below the statutory maximum (life imprisonment), *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii),

18

- the district court didn't impose a variance, *see* p. 15, above, and

- there's no suggestion that the court relied on incorrect facts.

The district court undoubtedly had discretion to vary downward based on the national average or criticisms of the guidelines' reliance on drug weights and purity. *See* pp. 15–16, above. But the district court also had discretion to sentence Mr. Naranjo-Aguilar to the bottom of the guideline range. *See* p. 16, above. Because this sentence fell within the district court's discretion, we don't regard the 235-month term as substantively unreasonable.

**4.    Conclusion**

We conclude that the district court didn't err in imposing the sentence.

In reaching this conclusion, we uphold the district court's denial of a downward adjustment for a minor role. When the district court ruled, it acknowledged Mr. Naranjo-Aguilar's proffer and didn't say that it was disregarding participants in other districts.

Nor was the sentence procedurally or substantively unreasonable. The court considered the guideline range as a benchmark for similarly situated defendants and chose a sentence at the floor of that range.

We thus affirm the sentence.